## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Western Division
Civil Action
No. _____ . MAP

SARUN HONG,
     Plaintiff

v.

PETER FAPPIANO, III, Individually and in his
official capacity as a Detective for the Northampton
Police Department, RUSSELL SIENKIEWICZ, In his
official capacity as Chief of the Northampton Police
Department, MARY CLARE HIGGINS, In her
official capacity as Mayor of the City of
Northampton, and CITY OF NORTHAMPTON, a
Municipal Corporation,
     Defendants

---

### INTRODUCTION/JURISDICTION

1.     This is an action for damages under the Federal Civil Rights Act, 42 U.S.C. Secs. 1983 and 1988. The plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. Secs. 1331 and 1343, and further invokes the pendant jurisdiction of this Court pursuant to 28 U.S.C. Sec. 1367 to consider the causes of action arising under state law, sounding in tort, the Massachusetts Tort Claims Act, M.G.L. Chapter 258 et seq., The Massachusetts Declaration of Rights and the Massachusetts Civil Rights Act, M.G.L. Chapter 12, Sections 11 H and 11 I.

2.     There exists between the parties an actual controversy justiciable in nature.

01

## PARTIES

3.     The plaintiff, Sarun Hong, has at all times relevant to the allegations of this complaint been a resident of the City of Holyoke, Hampden County, in the Commonwealth of Massachusetts.

4.     Defendant Peter Fappiano, III is employed as a Detective in the Northampton Police Department, and at the time of the incidents which are the subject of this complaint, was a detective in the Northampton Police Department, Northampton, Hampshire County, Massachusetts.

5.     Defendant Russell Sienkiewicz is employed as the Chief of the Northampton Police Department, and at the time of the incidents which are the subject of this complaint, was the Chief of the Northampton Police Department, Northampton, Hampshire County, Massachusetts.

6.     Mary Clare Higgins is currently and at all times relevant to this complaint, Mayor of the City of Northampton, Hampshire County, Massachusetts.

7.     The City of Northampton is sued to recover for damages pursuant to 42 U.S.C. Sections 1983 and 1988 and pursuant to M.G.L. Chapter 258 et seq.

## Statement of Facts

8.     On February 19, 2008 Sarun Hong was arrested for a home invasion which took place in the early afternoon in Florence, Massachusetts on February 13, 2008.

9.     On the same day, Hong was aggressively interrogated by Detective Peter Fappiano and other law enforcement officers.

10.     Hong explained to Fappiano and other law enforcement officers that he had been
in Simsbury, Connecticut working at the time of said home invasion and vehemently denied
involvement in the home invasion.

11.     Hong repeatedly encouraged defendant Fappiano to talk to his boss and co-
workers since they would be able to confirm his alibi.

12.     On February 19 and February 21, 2008, Detective Fappiano and other law
enforcement officials spoke to individuals who verified Hong was in fact in Simsbury
Connecticut at the time of the crime.

13.     Despite strong alibi evidence clearing Hong, Fappiano and others continued to
encourage prosecution of Hong, including but not limited to, Hong remaining incarcerated
thereby depriving Hong of his liberty from February 19, 2008 to March 14, 2008.

14.     Hong did not commit the crime and the charges were eventually dropped after
Hong was incarcerated.

15.     The crime of February 13, 2008 involved a report of a home invasion of a
Cambodian household in the City of Northampton in which the two perpetrators allegedly
appeared to be and spoke Cambodian to the victim (hereafter "K").

16.     Defendant Fappiano in his capacity as a Detective for the Northampton Police
Department, was assigned to carry out and supervise the investigation of the home invasion.

17.     In his capacity as a senior Detective assigned to the investigation, Fappiano
supervised and coordinated the actions of other detectives and officers from the Northampton
Police Department assisting in conducting the investigation.

.

18.     On February 16, 2008, Fappiano was contacted by K's father, and advised that K was viewing Asian websites on MySpace.com with a relative and that K had located pictures of a Cambodian male who resembled a suspect in the home invasion.

19.     Fappiano learned from the father that his daughter and their relative were viewing the websites and that the relative who knew the plaintiff and his family had directed his daughter to a specific website with photographs of the plaintiff.

20.     Fappiano asked the father to meet him at the police department with his daughter and 45 minutes later the father and K met with Fappiano.

21.     Fappiano, the father and K navigated to the website and located a picture of the plaintiff and K indicated that she thought the pictures of the plaintiff resembled a participant in the home invasion.

22.     K and Fappiano viewed additional photographs at the website and observed at least three other photographs of the plaintiff.

23.     K advised Fappiano that she did not know the identity of the plaintiff, but upon viewing him in the picture, spoke to her relative, who provided the plaintiff's name, nickname, residence and information regarding his family.

24.     Based upon the name and information provided by the relative of the victim, Fappiano assembled a photo array containing six photographs of Cambodian males, including the photograph of the plaintiff.

25.     Fappiano directed Northampton Police Officer Brent M. Dzialo to present the photo array to K.

26.     The presentation of the photo array by Officer Dzialo took place immediately following the repeated viewing of several photographs of the plaintiff from a MySpace website.

27.     Notwithstanding the previous suggestive viewing of the plaintiff's photograph, K was unable to identify any of the individuals in the photo array presented by Officer Dzialo.

28.     Following the unsuccessful photo array, Fappiano and State Trooper Jamie Magarian counseled K for approximately 45 minutes after which K agreed to view the photo array a second time.

29.     The same six photographs were rearranged and the photo array was presented a second time to K by Officer Carlos LeBron, under the direction of Fappiano.

30.     In the second presentation of the array, K identified one photograph, not the plaintiff's, as the individual who participated in the home invasion, stating "I am certain that this was the guy with the gun; probably in the high 90's".

31.     Unsatisfied with K's failure to identify the plaintiff, Fappiano requested that the victim view the photo array a third time.

32.     Under the direction of Fappiano, Officer LeBron presented the photo array a third time.

33.     Officer LeBron presented the same six photographs rearranged and the victim, K, again identified the same individual, not the plaintiff, as the participant in the home invasion, stating "Yes, looks like the guy who had the gun but he also looks like the other guy in the photos".

34.     Upon K failing to identify the plaintiff in three attempts with the same photo array, Fappiano directed LeBron to present the same photo array a fourth time.

35. LeBron rearranged the same six photographs and presented them to K, who again identified the same photograph, not the plaintiff's, stating "Yes, looks like the guy with the gun, high 90% sure". LeBron indicated that on this fourth presentation, K stated that the plaintiff's photo "looks like the guy pointing with gun from other pictures".

36. Fappiano conducted no further identification procedures with K.

37. Fappiano at the time had been a police officer for 21 years and assigned to the Detective Bureau for 13 years, and over the course of his employment participated in hundreds of criminal investigations, including breaking and entering, armed robbery, serious assaults and homicides and during the course of his employment, has written and executed or participated in the execution of hundreds of search warrants.

38. Fappiano also has received specialized training in the investigation of property crimes and crimes against persons.

39. As a senior Detective with thirteen years experience, Fappiano was familiar with proper, non-suggestive photo array identification procedures, and knew that the presentation of a photo array immediately after having the witness view multiple photos of the presumptive suspect and repeating the presentation of the array until the witness identified the presumptive suspect, was highly suggestive and improper.

40. On the basis of the purported identification of the plaintiff through the suggestive and successive presentation of photo arrays, along with a confirmation of the address of the plaintiff provided by a relative, and confirmation of the plaintiff's possession of a white four door sedan, Fappiano applied for a warrant to search the plaintiff's home and vehicle.

41.     In his affidavit in support of the search warrant, Fappiano embellished in his description of K's attempt to identify the suspect in the successive photo array presentations.

42.     Fappiano stated that during the third presentation of the photo array, K looked at the plaintiff's photo for a while.

43.     Fappiano also misrepresented that K stated she was 90% sure that "both pictures looked like the male" when, in fact, K had merely indicated that the plaintiff's photograph looked like the photograph of a different individual who she repeatedly selected as the suspect.

44.     Fappiano's presentation of the photo array immediately after repeated viewings of photos of the plaintiff was highly and improperly suggestive and contrary to the standards for conducting non-suggestive identification procedures.

45.     The extensive coaching and repeated attempts to press for the identification of the plaintiff after K had repeatedly identified another individual, was highly improper and suggestive and contrary to the appropriate procedures for conducting a non-suggestive identification from a photographic array.

46.     The embellishment of K's viewing of the photo arrays and the misrepresentation of the strength of her "identification" of the plaintiff was highly improper, and in violation of the standards for a non-suggestive identification and in violation of the standards established in Franks v. Delaware, 438 U.S. 154 (1975) for presenting an affidavit in support of a search warrant.

47.     Fappiano's conduct was willful, intentional and deliberate, and based upon his experience, he knew that the use of suggestive and improper identification procedures in his application for search and arrest warrants would deny the plaintiff's Federal and State

Constitutional rights to be free from unlawful search and seizure, a violation to his Federal and State due process rights.

48. Based upon Fappiano's affidavit, warrants were issued by the Northampton District Court for a search of the plaintiff's home at 98 James Street, Holyoke, Massachusetts, as well as his car, and a criminal complaint was obtained against the plaintiff.

49. On February 19, 2008, the plaintiff was arrested and interrogated extensively by Fappiano with the assistance of a State Trooper. During this interrogation, the plaintiff expressed surprise and confusion over his being identified as a suspect in a home invasion, and when told of the date and time of the incident, he immediately explained that he had been at work that day in Simsbury, Connecticut, more than a one-hour drive from the scene of the home invasion, that his time card would confirm this and that his presence at work would also be confirmed by speaking to three co-workers and his supervisor.

50. Upon being pressed by Fappiano, Hong repeatedly and emphatically stressed his innocence and repeatedly asked Fappiano to talk to his boss and co-workers to confirm his presence at work all day on February 13, 2008.

51. Hong was cooperative during the interrogation and when asked what would be found upon the search of his house volunteered that there were two handguns in a safe in his bedroom. Hong described with the exact location of the handguns and provided a diagram of the house to assist the officers in locating them.

52. Hong adamantly maintained that he was not involved in any home invasion, that his presence in Simsbury could be confirmed and that the handguns were in a locked safe which was not accessible to anybody else.

53. Fappiano assured the plaintiff that he would investigate his alibi witnesses.

54. A search of the plaintiff's home was conducted on February 19, 2008 by a joint force of Northampton Police, Holyoke Police and State Police.

55. Upon conducting the search of the plaintiff's home, the police located the two handguns where the plaintiff had indicated, but obtained no evidence related to the home invasion.

56. A search of the plaintiff's vehicle also produced no evidence whatsoever linking the plaintiff to the home invasion.

57. On February 19, 2008, Fappiano, Trooper Jamie Magarian, Northampton Detective Al Borowski and Trooper Geraldine Bresnahan, visited the plaintiff's place of employment in Simsbury, Connecticut, to interview the plaintiff's co-workers and employer.

58. Written statements of plaintiff's co-workers Sophak IV, Trung Vo, and the plaintiff's supervisor, Michael Sayers, were obtained.

59. Sophak IV and Trung Vo told investigators that the plaintiff was at work all day on February 13, 2008 and that at approximately 12:30 to 1:00 p.m., the time of the home invasion, the plaintiff went to lunch with Sophak IV and another co-worker, Pat Finn at a nearby restaurant, then returned to work for the rest of the afternoon.

60. Sophak IV and Trung Vo gave completely consistent statements that the plaintiff was at work all day and that they accompanied him for a short lunch at a nearby Chinese restaurant then returned to work for the rest of the afternoon.

61. Michael Sayers, the plaintiff's supervisor, stated that he believed that the plaintiff was at work all day, even though Sayers had left for a period of time, and explained that given

the size of the work place, and the policies regarding absences, he would have been aware if the plaintiff had not been at work that day.

62.  The plaintiff's time card at his place of employment corroborated the plaintiff's claim and the statements of his co-workers that he had been in Simsbury, CT at the time of the home invasion.

63.  In addition to obtaining three statements from the plaintiff's co-workers confirming his alibi on February 19, 2008, Fappiano conducted a recorded face to face interview with Pat Finn, another co-worker of the plaintiff on February 21, 2008.  Finn gave a very detailed explanation confirming the plaintiff's presence at work on February 13, 2008 and confirming that he went to lunch with the plaintiff and Sophak IV at a nearby Chinese restaurant then returned to work for the rest of the afternoon.

64.  Fappiano aggressively challenged Finn on his statement, questioning whether he had collaborated with the plaintiff to create an alibi, warning him that he would be prosecuted for false statements, and Finn asserted repeatedly and emphatically that he was certain that the plaintiff was at work on February 13, 2008, that he was with him at lunchtime, and that he would not and had no reason to lie for the plaintiff.  Finn repeatedly expressed concern that he believed Fappiano had arrested an innocent person.

65.  In addition to consistent statements from four reliable alibi witnesses, additional information corroborated that the plaintiff was not the perpetrator of the home invasion.  During his interrogation, the plaintiff offered to Fappiano that there had been a partial power failure at his place of employment on February 13, 2008, and this fact was confirmed by Michael Sayers in his interview with Fappiano on February 19, 2008.

66. The victim of the Northampton home invasion described the two perpetrators as 5'8" - 5'9" and 30-40 years old. The plaintiff was 23 at the time and at least 5'11".

67. The plaintiff did not match the description of the suspect in the home invasion in Granby, Massachusetts which occurred in December, 2007, and which Fappiano presented as related to the Northampton home invasion in his affidavit in support of the search warrants. Specifically, one suspect in the Granby home invasion was described as 5 feet tall, the other suspect was described as 5'5" tall and thin. The plaintiff is approximately 5'11".

68. In addition, on February 18, 2008, Fappiano provided photographs from the photo array to Detective Barbara Fenn of the Granby Police to show to the Granby home invasion victim, who was an acquaintance of the plaintiff and would have easily confirmed that the plaintiff had not participated in the Granby home invasion.

69. Notwithstanding substantial evidence establishing that the plaintiff was not involved in the Northampton home invasion, including but not limited to, the highly suggestive and improper photo identification, the consistent and detailed alibi statements by four witnesses, the confirmation of specific details concerning the power failure at work on the 13th, the failure of the plaintiff to match the description of the suspects in the Granby home invasion, the plaintiff's cooperation in his interrogation and his forthright insistence that he was not involved in the home invasion, the plaintiff encouraging Fappiano to verify with co-workers that he was in Connecticut, Fappiano continued to pursue Hong as the perpetrator and advise the prosecutor that he believed the plaintiff was involved in the Northampton home invasion.

70. Fappiano knew that by continuing to assert that the plaintiff had been involved in the Northampton home invasion, and withholding the substantial exculpatory evidence, the

plaintiff would be denied due process, the right to exculpatory evidence and would remain confined in jail.

71.     Based upon the information and opinions expressed by Fappiano concerning his investigation to Assistant District Attorney Michael Cahillane, the Commonwealth opposed a motion for the reduction of the plaintiff's bail at a hearing on February 28, 2008, and the plaintiff remained incarcerated on bail of $25,000.00.

72.     Despite ample evidence suggesting that the plaintiff was wrongly accused, Fappiano continued to assert that the plaintiff was involved in the Northampton home invasion including before and at a bindover hearing scheduled for March 14, 2008, at which point the Commonwealth initially attempted to continue the bindover hearing to avoid having the alibi witnesses who were present at Court testify.

73.     When pressed by the Court to proceed with the hearing on March 14, 2008, the prosecution filed a nolle prosqui, withdrawing the charges against the plaintiff. The charges were never resurrected.

74.     The plaintiff was held in jail from February 19, 2008 to March 14, 2008, based upon Fappiano's representations to the Assistant District Attorney, despite the fact that as early as February 19, 2008, Fappiano had ample evidence indicating that the plaintiff was not involved in the home invasion.

75.     The information possessed by Fappiano as early as February 19, 2008, was so compelling in establishing the plaintiff's innocence, that any reasonable police officer, and especially a detective with the level of experience and training of Fappiano, would have recognized that the plaintiff was innocent, and that continuing to assert that the plaintiff was

involved in the home invasion would result in continued deprivation of the plaintiff's liberty and denial of his due process and other Constitutional rights.

76.     As a senior detective, with responsibility for supervising other officers and conducting training for police officers, Fappiano was a high level officer and acting in the capacity of a supervisor, implementing and executing policies and decisions officially adopted within the Northampton Police Department, and therefore his actions are attributable as policy to the Northampton Police Department.

77.     Fappiano's actions were consistent with his usual practices as a detective in the Northampton Police Department and his conduct was approved, so as to constitute a custom that is approved by the Department.

78.     As a result of Fappiano's misrepresentations and withholding of exculpatory evidence in favor of the plaintiff, the plaintiff suffered a deprivation of his liberty, a denial of due process and a denial of his right to exculpatory evidence.

79.     As a result of his incarceration, the plaintiff was deprived of the companionship of his wife and a six month old baby, was deprived of his right to be home with his family and deprived of his liberty.

80.     As a result of the deliberate actions of Fappiano, the plaintiff suffered extreme emotional distress, loss of consortium, lost income, and loss of his liberty.

81.     In addition, the plaintiff suffered harm to his reputation as a result of several news articles and broadcasts which identified him as the perpetrator of a violent crime in Northampton and other locations.

## CLAIMS FOR RELIEF

Count I: Deprivation of Constitutional Rights, Privileges and Immunities, 42 U.S.C. Sec. 1983

82.     Plaintiff incorporates by reference paragraphs 1 through 81 and makes them a part hereof.

83.     The defendant Fappiano's manipulation of the photo array identification, misrepresentation of the identification in his affidavit, failure to present clear exculpatory evidence exonerating the plaintiff, and continuing to advise the prosecutor that there was evidence that the plaintiff was involved in the home invasion were deliberate, malicious, willful, wanton, intentional, in bad faith and/or reckless.

84.     Defendant Fappiano's knowingly violated clearly established and well settled Federal and State Constitutional rights of the plaintiff, including but not limited to, deprivations of freedom from unreasonable seizure of his person, loss of liberty, deprivation of due process, denial of his right to exculpatory evidence, infliction of extreme emotional distress, damage to his reputation and other damages, under color of state authority.

85.     Defendant Fappiano's actions deprived the plaintiff of the aforesaid rights which are protected under the Fourth, Fifth, Sixth and Fourteenth Amendment to the United States Constitution and Articles 12 and 14 of the Massachusetts Declaration of Rights.

86.     Defendant Fappiano actions in wrongfully manipulating identification information and withholding exculpatory evidence in order to further the prosecution and incarceration of the plaintiff, was knowing, intentional, malicious, wanton and in bad faith, and constitutes malicious prosecution.

87.    As a direct and proximate result of defendant Fappiano's actions, the plaintiff suffered damages as aforesaid.

88.    The plaintiff is thereby entitled to damages and relief against defendant Fappiano pursuant to 42 U.S.C. Sectiions 1983 and 1988.

### Count II: Violation of M.G.L. c. 12, s.11H and 11I

89.    The plaintiff incorporates by reference paragraphs 1 through 88 and makes them a part hereof.

90.    Defendant Fappiano's willful, deliberate and intentional actions effected the plaintiff's continued incarceration and deprived him of the right to be free from unreasonable seizure of his person, which right is guaranteed by the United States Constitution, the Massachusetts Declaration of Rights and the laws of the Commonwealth of Massachusetts.

91.    By engaging in the above described actions, the defendant used threats, intimidation and coercion and thereby interfered or attempted to interfere with the plaintiff's exercise of enjoyment of rights guaranteed to him under the United States Constitution, the Massachusetts Declaration of Rights and the laws of the Commonwealth of Massachusetts.

92.    As a direct and proximate result thereof, the plaintiff suffered damages as aforesaid.

93.    The plaintiff is thereby entitled to damages and relief against defendant Fappiano under M.G.L. c. 12, s. 11H and 11I.

### Count III: Malicious Prosecution

94.    The plaintiff incorporates by reference paragraphs 1 through 93 and makes them a part hereof.

95. Defendant Fappiano initiated a prosecution against the plaintiff based upon the highly suggestive and manipulated photographic identification, and willfully and intentionally continued to promote the prosecution and incarceration of the plaintiff despite knowledge that the plaintiff was innocent.

96. Defendant Fappiano acted with malice and intent in manipulating evidence against the defendant and failing to proffer exculpatory evidence to the prosecutor.

97. The plaintiff was exonerated of the charges that were pursued by defendant Fappiano.

98. Defendant Fappiano's actions constituted malicious prosecution.

99. As a direct proximate result of the defendant Fappiano's malicious prosecution, the plaintiff suffered damages as aforesaid.

100. The plaintiff is thereby entitled to damages against defendant Fappiano in tort against defendant Fappiano for malicious prosecution.

### Count IV: False Imprisonment

101. The plaintiff incorporates by reference paragraphs 1 through 100 and makes them a part hereof.

102. Defendant Fappiano's actions in manipulating evidence to secure the arrest of the plaintiff and in withholding evidence exonerating the plaintiff resulted in the confinement of the plaintiff without justification.

103. Defendant Fappiano's actions in manipulating the identification information and withholding exculpatory evidence to exonerate the plaintiff were willful, malicious and intentional actions taken with the intent to extend and continue the plaintiff's confinement.

104.    As a direct and proximate result of the defendant Fappiano's actions, the plaintiff
suffered damages as aforesaid.

105.    The plaintiff is thereby entitled to damages against defendant Fappiano in tort for
false imprisonment.

### Count V:  Intentional Infliction of Emotional Distress

106.    The plaintiff incorporates by reference paragraphs 1 through 105 and makes them
a part hereof.

107.    Defendant Fappiano's actions as aforesaid were extreme and outrageous and,
intentional, willful and wanton.

108.    Defendant Fappiano knew or should have known that his actions would result in
extreme emotional distress to the plaintiff.

109.    As a direct and proximate result of defendant Fappiano's actions, the plaintiff
suffered extreme emotional distress and the damages as stated aforesaid.

110.    Plaintiff is thereby entitled to damages against defendant Fappiano in tort for
intentional infliction of emotional distress.

### Count VI:  Negligence/Gross Negligence

111.    The plaintiff incorporates by reference paragraphs 1 through 110 and makes them
a part hereof.

112.    Defendant Fappiano owed a duty of care to the plaintiff to properly carry out his
duties as an investigator and to ensure that the plaintiff would not be arrested without sufficient
probable cause and that upon discovery of evidence exonerating the plaintiff, to forward such
evidence to the District Attorney.

113.    Defendant Fappiano breached his duty to the plaintiff by manipulating evidence to arrest the plaintiff and obtain the search warrant and by failing to disclose or by discounting without justification exculpatory evidence which indicated that the plaintiff was not a participant in the home invasion.

114.    As a direct and proximate result of defendant Fappiano's breach of duty, the plaintiff suffered damages as aforesaid.

115.    Defendant Fappiano's actions and breach of duty to the plaintiff were willful, wanton and grossly negligent.

116.    Plaintiff is thereby entitled to damages against defendant Fappiano in tort for negligence and/or gross negligence.

Count VII: Deprivation of Constitutional Rights, Privileges and Immunities, 42 U.S.C. Sec. 1983

117.    Plaintiff incorporates by reference paragraphs 1 through 116 and makes them a part hereof.

118.    At all times relevant to this complaint, defendant Fappiano was acting individually and in his official capacity as a senior detective for the Northampton Police Department.

119.    As a senior detective in the Northampton Police Department, and as the detective in charge of the investigation of the home invasion which is the subject of this complaint, Fappiano was in a supervisory position and implementing or executing policies or decisions officially adopted by the Northampton Police Department with respect to the conduct of investigations and prosecution of offenses.

120. As a supervisor in charge of the investigation and a person implementing or executing policies or decisions officially adopted by the Northampton Police Department, defendant Fappiano's actions are attributable to the Northampton Police Department and to the City of Northampton.

121. The City of Northampton, through its agent, Russell Sienkiewicz, Chief of the Northampton Police, were aware of the conduct of defendant Fappiano in both the instant action as well as in prior activities of defendant Fappiano, and approved his actions by failing to control, supervise or train Fappiano to prevent him from depriving the plaintiff of his privileges, rights and immunities protected under the United States Constitution, the Massachusetts Declaration of Rights and the laws of the Commonwealth.

122. The actions of Fappiano as a senior detective in the conduct of the investigation of the home invasion and the presentation of information to the District Attorney's office was pursuant to the custom of the Northampton Police Department.

123. As a direct and proximate result of the actions of the Northampton Police Department and the City of Northampton, the plaintiff was deprived of well settled state and federal constitutional rights, including but not limited to, deprivations of freedom from unreasonable seizure of his person, loss of liberty, infliction of emotional distress and deprivation of rights through fear, intimidation, coercion and under the color of state authority.

124. Defendant City of Northampton is liable to the plaintiff for the actions of defendant Fappiano pursuant to Monell v. Department of Social Services, 436 U.S. 658, 690-695 (1978).

125.    As a direct and proximate result thereof, the plaintiff suffered damages as aforesaid.

126.    The plaintiff is thereby entitled to damages and relief pursuant to 42 U.S.C. Sec. 1983 and 1988.

### Count VIII:  Negligence

127.    Plaintiff incorporates by reference paragraphs 1 through 126 and makes them a part hereof.

128.    Defendants Peter Fappiano, in his official capacity as a detective of the Northampton Police Department, Russell Sienkiewicz, in his official capacity as Chief of the Northampton Police Department, Mary Clare Higgins, in her official capacity as Mayor of the City of Northampton and the City of Northampton are liable to the plaintiff for negligence pursuant to M.G.L. c. 258, et seq.

129.    On February 12, 2010, the plaintiff served on the defendants Russell Sienkiewicz, Mary Clare Higgins and the City of Northampton, a presentment letter pursuant to M.G.L. c. 258, s. 4.

130.    On August 9, 2010 the City of Northampton and the Northampton Police Department denied the plaintiff's claim by written correspondence.

131.    As a direct and proximate result of the negligence of defendants Peter Fappiano, Russell Sienkiewicz, Mary Clare Higgins and the City of Northampton, the plaintiff suffered damages as aforesaid.

132.    The plaintiff is thereby entitled to damages and relief pursuant to M.G.L. c. 258, s. 2.

## PRAYER FOR RELIEF

Wherefore the plaintiff requests that the Court grant relief as follows:

1.  Award the plaintiff compensatory damages against the defendants;

2.  Award the plaintiff attorneys' fees, costs and interest as provided by law, and

3.  Award the plaintiff such other relief as the Court deems necessary, fair and just.

SARUN HONG
By his attorneys,

Michael Malkovich, Esquire
BBO #315870
Stella Xanthakos, Esquire
BBO #536050
43 Center Street
Northampton, MA 01060
Tel. (413) 584-2764

## JURY DEMAND

The plaintiff hereby demands a jury trial on all claims so triable.

Michael Malkovich, Esq.